## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

IN RE:

MICHAEL M. LASH
CHARLOTTE R. LASH

        Debtor(s).

In Proceedings
Under Chapter 13

Case No. 19-30708

### OPINION

This matter is before the Court on the Debtors' Motion to Voluntarily Dismiss their Chapter 13 case and the Trustee's objection thereto.  The issue before the Court is whether the Debtors have acted in bad faith such that their case should be dismissed with a permanent bar to discharge of their prepetition debts.

### FACTS

Debtors Michael and Charlotte Lash ("Debtors") filed a Chapter 13 proceeding on May 28, 2019.  The petition, schedules and Chapter 13 plan were all prepared and filed on behalf of the Debtors by their attorney, Ronald Buch. At the time of filing, both Debtors were employed full-time and, because their income exceeded the median income level for their household size, they were required to file a sixty-month plan.[1]  Debtors were ineligible for Chapter 7 relief because they had previously received a Chapter 7 discharge in a case that had been filed within the preceding eight-year period.[2]

---

[1] According to the Debtors' Statement of Current Monthly Income (Form 122C-1), the Debtors' income for the six-month period prior to fling was $109,283.04,

[2] Debtors filed a Chapter 7 petition on August 31, 2012 and received a discharge in that case on February 15, 2013 (Case No. 12-31664).

The Debtors' original Schedule A/B, which was filed with the petition, listed their various assets. These items included a "wedding band and wedding ring" valued at $50.00. Debtors also listed "3 clothing [sic], 3 coats, 3 shoes, 4 hats, 4 ties/belts, [and] 4 purses" with a stated value of $0. No pending lawsuits were disclosed on Schedule A/B. *Debtor's Schedule A/B*, ECF Doc. 1; Trustee's Exhibit 2.

Trustee Russell C. Simon ("Trustee") conducted the initial meeting of creditors pursuant to 11 U.S.C. § 341 on July 2, 2019. The Debtors were admonished prior to the examination that their testimony was being given under penalty of perjury. In response to the Trustee's inquiries regarding their scheduled clothing and jewelry items, the Debtors testified that they had not listed all their clothing and jewelry. The Debtors estimated the value of their jewelry at $3,200.00 and the value of their clothing at $400.00. Because there were obvious discrepancies between the Debtors' schedules and their § 341 testimony, the meeting of creditors was adjourned at the request of Debtors' counsel. The Trustee directed the Debtors to meet with their counsel prior to the rescheduled meeting of creditors and go through all their schedules "line by line." After this review, the Debtors were to file amended schedules, if necessary, to correct any errors.

On August 7, 2019, the Debtors filed an amended Schedule A/B. The Debtors made numerous changes and corrections to that schedule, including increasing the values of their jewelry and clothing to $494.00 and $400.00 respectively. The Debtors did not disclose any pending lawsuits on the amended Schedule A/B, nor was an amended Statement of Financial Affairs filed.

The rescheduled Meeting of Creditors was conducted on September 24, 2019. Again, the Debtors' testimony at that meeting conflicted with the information provided on their schedules

2

and other documents.  Specifically, the Debtors failed to list mortgage and vehicle payments that they had made within ninety days of the filing of their bankruptcy petition on their Statement of Financial Affairs. *See Debtors' Statement of Financial Affairs,* ECF Doc 1, ¶ 6.

On October 8, 2019, the Trustee filed a First Amended Objection to the Debtors' First Amended Plan. The Trustee raised *numerous* issues in his objection, including the Debtors' failure to list the above-referenced mortgage and vehicle payments on their Statement of Financial Affairs.  In addition, the Trustee cited a conflict between the Debtors' Statement of Financial Affairs and their Form 122C-2 regarding the Debtors' charitable contributions.  At Line 31 of their Form 122C-2, the Debtors stated that they made charitable contributions of $560.00 per month.  Despite this, however, the Debtors listed no charitable contributions on their Statement of Financial Affairs.

On December 23, 2019, the Debtors filed an amended Statement of Financial Affairs and an amended Form 122C-2 to list the previously undisclosed transfers and contributions.  Both documents reflected monthly charitable contributions of $560.00.  Although the amended Statement of Financial Affairs listed charitable contributions in this amount, it did not state the name and address of the charity, nor did it provide a description of the contribution as required.

Not surprisingly, the Trustee objected to the amended Statement of Financial Affairs and Form 122C-2.  While noting that the amended Statement did not include all the necessary information regarding Debtors' charitable contributions, this was actually not the basis of the Trustee's objection. Instead, the Trustee objected because, according to documentation that he had received from the Debtors, the Debtors, in fact, had made *no* charitable contributions.  In response to this objection, on January 2, 2020, the Debtors again amended their Statement of Financial Affairs and Form 122C-2, this time to remove the claimed charitable contributions.

Upon the filing of these amended documents, the Trustee recommended confirmation and the Debtors' First Amended Plan was confirmed on January 10, 2020.

In July 2020, the Trustee conducted a routine audit of the Debtors' case and discovered that Debtor Michael Lash had two pending worker's compensation claims against his employer. The first claim (19-WC-014330), was filed on May 16, 2019 for a pre-petition incident that occurred on May 9, 2019. *See* Trustee's Exhibit 5.  The second claim (19-WC-022849) was filed August 6, 2019 for a post-petition incident that occurred on July 25, 2019. *See* Trustee's Exhibit 7.  Neither of these claims had been disclosed in the Debtors' bankruptcy petition. On July 8, 2020, the Trustee sent an inquiry to both the Debtors and their counsel requesting information regarding these worker's compensation claims. However, neither the Debtors nor their counsel ever responded to this request.  Instead, on August 7, 2020, the Debtors filed the instant motion seeking to dismiss their Chapter 13 petition.

The Trustee objected to dismissal arguing that he was unable to discern whether the dismissal was a bad faith attempt by the Debtors to withhold potential worker's compensation settlement proceeds from their creditors *See Trustee's Objection to Motion to Dismiss*, ECF Doc. 82.  Debtors filed a response stating that they had experienced a drastic decrease in their income due to several post-petition work injuries suffered by Mr. Lash[3] and, consequently, they were no longer able to make the monthly plan payments of $1,080.00.  Their response further stated that "[f]rom the inception of this Chapter 13 case, it has been, and remains, the Debtor's intention to dismiss the instant case and refile a new Chapter 7 case after August 31, 2020, the 8-year

---

[3] According to the Debtors' response, Mr. Lash's gross monthly income was reduced from $4,024.30 to $748.00 in social security and $615.33 from his pension.  *Reply to Trustee's Objection to Debtors' Motion to Dismiss Case*, ECF Doc. 85, ¶ 5.  This reduction in income had resulted in a $2,160.00 delinquency in the Debtors' plan payments as of September 2, 2020. *Id.* at ¶ 6.

anniversary of their prior Chapter 7 case." *Debtor's Reply to Trustee's Objection to Debtors'*
*Motion to Dismiss Chapter 13 Petition*, ECF Doc. 85, ¶ 4.

The Court conducted an initial telephonic hearing on the Motion to Dismiss on
September 17, 2020. At that time, the Trustee orally amended his objection and requested,
alternatively, that any dismissal be with a permanent bar to discharge of the debts in this case.
After hearing the arguments of counsel, the Court rescheduled the matter for an evidentiary
hearing on October 27, 2020.  The Debtors appeared at that hearing and provided testimony.
Both Debtors testified that they had sought bankruptcy protection because, although they were
current on all their obligations at the time of filing, they were finding it increasingly difficult to
make ends meet.  Further, both Debtors testified that they had been advised by their counsel that
they were not eligible for Chapter 7 relief at the time that their petition was filed due to their
previous Chapter 7 discharge.  However, contrary to the representations in their reply to the
Trustee's Motion to Dismiss, Mr. Lash testified that neither he nor his wife had filed this case
with an intention to ultimately dismiss it.  In fact, Mr. Lash stated that but for his injuries and
subsequent loss of income, he and his wife would likely still be making their Chapter 13 plan
payments to the Trustee.

The  questioning at trial focused on three primary areas: (1) the nature of the Debtors'
financial condition both at the time that the petition was filed and at the time that they sought to
dismiss their Chapter 13 case; (2) the inconsistencies between the Debtors' schedules and their §
341 Meeting testimony, particularly with regard to the value of their clothing and jewelry; and
(3) the Debtors' failure to disclose Mr. Lash's pending worker's compensation claims.

Mr. Lash testified that at the time of filing he was employed at American Steel in Granite
City, Illinois as a finisher helper.  His regular rate of pay was $21.00 per hour.  In addition, Mr.

5

Lash earned additional income by performing piecework.  The Debtors' original Schedule I reflected that he had monthly income of $6,666.00.  However, Mr. Lash sustained work-related injuries in May and June 2020.  These injuries, coupled with layoffs by his employer, resulted in Mr. Lash's forced retirement.  At the time of trial, Mr. Lash's monthly income was approximately $4,000.00 less than it had been at the time of filing.  Both Debtors testified that because of this reduction in Mr. Lash's income, they had been unable to make any Chapter 13 plan payments after June 2020.

As to their jewelry, both Debtors testified that they each owned inexpensive wedding rings and watches.  In addition, Mrs. Lash testified that she owned a $19.00 pair of earrings. Neither Debtor could explain why they had estimated the value of their jewelry at $3,200.00 at their § 341 Meeting, but both stated that the $494.00 value on their amended Schedule A/B accurately reflected the value of their jewelry.   Similarly, Mrs. Lash testified that the value of their clothing was $400.00 as stated on the amended Schedule A/B.   She admitted that the $0 figure stated on the original schedule was incorrect.  However, Mrs. Lash explained that neither she nor her husband owned anything "fancy" and she had not thought that their used clothing had any value.

Under questioning about the undisclosed worker's compensation suits, Mr. Lash testified that he had filed three (3) worker's compensation claims between May 16, 2019 and August 6, 2019, two of which had been filed prepetition. The first prepetition claim, which was filed May 16, 2019, involved an injury to his shoulder. *See* Trustee's Exhibit 5.  Mr. Lash testified that he believed that this claim "had not been honored" and was unsure whether this claim needed to be listed on his bankruptcy schedules or not.  However, he did state that he advised his attorney of

6

this claim upon receiving the Trustee's inquiry letter and meeting with counsel to discuss dismissal of this case.

The second prepetition claim involved a minor foot injury that Mr. Lash sustained on April 25, 2019.  He testified that he filed the corresponding May 24, 2019 claim only because his employer's policy required that he do so.  Mr. Lash stated that he did not disclose this claim on his bankruptcy schedules because he believed that it "wasn't a case." He explained that he had been advised by both his employer's physician and his worker's compensation attorney that the claim was "irrelevant" due to the minor nature of the injury.  Again, Mr. Lash testified that while he had not listed the claim on his schedules, he had discussed it with his bankruptcy attorney.

As to the third claim, a post-petition action which was filed August 6, 2019, Mr. Lash admitted that he had not notified the Trustee about this claim.  Again, however, he stated that he had, "told his attorney."  No further testimony was given regarding this claim.

Mrs. Lash also provided testimony regarding the worker's compensation claims.  Under direct examination, Mrs. Lash testified that she and her husband experienced a drastic reduction in income after her husband's forced retirement.  When they were no longer able to pay both their mortgage and their Chapter 13 plan payments, the Debtors met with their attorney to discuss the possibility of dismissing their Chapter 13 case and filing Chapter 7.  Mrs. Lash testified that they told their attorney about Mr. Lash's pending worker's compensation claims at that meeting. According to Mrs. Lash, their attorney advised them that these claims would have to be disclosed in their Chapter 7 case. However, there was no testimony as to whether the Debtors were advised that these claims should have been disclosed in the Chapter 13.

The Trustee maintains that the Debtors' failure to disclose the pending worker's compensation actions, as well as their repeated failure to file accurate schedules, constitutes bad

faith. Consequently, he requests that the Court should either impose a permanent bar to discharge of all the Debtors' scheduled debts or preclude the Debtors from filing a subsequent bankruptcy for a period of time pursuant to 11 U.S.C. § 349(a). Debtors assert that they have an unfettered right to dismiss this case pursuant to 11 U.S.C. § 1307(b) and further, that their conduct in this case does not warrant dismissal with prejudice.

## DISCUSSION

Pursuant to 11 U.S.C. § 1307(b), "[o]n request of the debtor at any time, if the case has not been converted under section 706, 1122, or 1208 of this title, the court shall dismiss a case under this chapter. . . ." Due to the mandatory language of this section, the majority of reported cases have held that Chapter 13 debtors have an absolute right to dismiss an unconverted case. *In re Williams*, 435 B.R. 552, 555 (Bankr. N.D. Ill. 2010). *See also Barbieri v. RAJ Acquisition Corp. (In re Barbieri)*, 199 F.3d 616, '"619-21 (2nd Cir. 1999); *In re Polly*, 392 B.R. 236, 239 (Bankr. N.D. Tex. 2008) *quoting Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35, 118 S.Ct. 956, 140 L.Ed. 2d 62 (1998) (the "mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion'").[4]

However, while § 1307(b) may afford a debtor a right to voluntarily dismiss their case, this dismissal may not be without consequence if the debtor has acted in bad faith or engaged in other conduct that is detrimental to creditors. Pursuant to 11 U.S.C. § 349(a),

> [u]nless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title of debts that where dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(g) of this title.

---

[4] Although the Trustee objected to the dismissal of this case, he advanced no arguments in support of this position. Instead, at trial and in his brief, the Trustee advocated only that the Debtors' case be dismissed with prejudice. As such, for purposes of this opinion, the Court will assume that the Debtors have an unqualified right to dismiss their case.

11 U.S.C. § 349(a).  Hence, the court can, "for cause," order that a case be dismissed with prejudice. In such instances, the court may either bar the dischargeability of debts that would have otherwise been discharged in the dismissed proceeding or prohibit the debtor from filing a subsequent petition related to those debts. *In re Hall*, 304 F.3d 743, 746 (7th Cir. 2002).  Because of the severity of the consequences, dismissal with prejudice is "generally reserved for extreme situations, such as when a debtor conceals information from the court, violates, injunctions, files unauthorized petitions, or acts in bad faith." *Id.  See also In re Merrill*, 192 B.R. 245, 252 (Bankr. D. Colo. 1995) (dismissal with bar to refiling is "an extreme remedy to be invoked with caution and restraint"); *In re Javarone*, 181 B.R. 151, 155 (Bankr. N.D.N.Y 1995) (dismissal with prejudice is "draconian relief" reserved for contumacious conduct by the debtor); *In re Smith*, 133 B.R. 467, 470 (Bankr. N.D. Ind. 1991) (dismissal with prejudice tantamount to the total denial of a debtor's discharge"[5]).

While bad faith can certainly constitute "cause" for dismissal of a case with prejudice under § 349(a), courts recognize that not all "bad faith" behavior warrants such drastic consequence.  As the court explained in *In re Hall*, 258 B.R. 908, 911 (Bankr. N.D. Ind. 2002),

> 'bad faith' is a term which is used to describe a broad range of improper conduct, only some of which is sufficient to support the extreme sanction of dismissal with prejudice.  There is the bad faith which can be associated with a lack of good faith or other misconduct to which we do not want to lend approbation, and then there is the ***BAAAD FAAAITH*** that is synonymous with egregious misconduct, contemptuousness, malfeasance, or systematic abuse. . . .  Thus, the term 'bad faith' actually represents a continuum of impropriety, which at one end may support the simple dismissal of a case and at the other end justify dismissal with the most extreme sanctions imaginable.

---

[5] Because dismissal with prejudice essentially has the same effect as a denial of discharge under 11 U.S.C. § 727, some commentators have suggested that Part VII of the Bankruptcy Rules applies and that an adversary proceeding should be required. *See* Keith M. Lundin, Lundin on Chapter 13, § 15.3, at ¶ 13, LundinOnChapter13.com (last visited February 8, 2021).

*Id.* (emphasis in the original).

Based on a review of the record in this case and the testimony of the Debtors, the Court does not believe that the errors and omissions in the Debtors' schedules and statements were necessarily caused by the Debtors' bad faith but were, instead, the result of bad practice by Debtors' counsel. Many of the problems cited by the Trustee could have been avoided had the schedules been *thoroughly* reviewed by Debtors' counsel with his clients prior to filing. For instance, much of the testimony at trial focused on the meager clothing and jewelry listed on the Debtors' original Schedule A/B. Debtors initially scheduled $50.00 in jewelry comprised only of two wedding rings. Similarly, they listed twenty-one total articles of clothing—twelve of which were accessories—to which they assigned a value of $0. The Debtors' responses certainly should have raised concerns with counsel upon review, as two above-median income debtors would very likely own more jewelry and clothing than what was disclosed. Further, even if the clothing was used and "not fancy," it still would have *some* value. The Court notes that after the Debtors carefully reviewed their Schedule A/B with their counsel, accurate answers were provided. This leads the Court to believe that no such review was conducted prior to filing.[6]

Further, even after the Trustee admonished the Debtors to perform a thorough review of *all* the schedules with their counsel, the Debtors only filed an amended Schedule A/B. In Debtors' trial brief, Debtors' counsel states that he was unaware that the Trustee wanted him to review the petition in its entirety. Instead, it was counsel's understanding that the Debtors were to meet with him to review and revise *only* Schedule A/B. *Memorandum in Support of Debtors' Motion to Dismiss and Objection to the Trustee's Request for Permanent Bar to Discharge*, ECF

---

[6] Given the nature of the Debtors' responses on the original Schedule A/B, it almost appears that the answers were transferred directly from an intake sheet or other informational form without further discussion with the Debtors.

Doc. 90, p. 2, n.2.  The Court finds this response troubling.  Before filing a debtor's petition and schedules, counsel has a responsibility to "take all possible steps to assure himself that the information listed in his client's petition is correct. . . inquire as to the amounts owed… and to explain the requirements of full disclosure. . . ."  *In re Engel*, 246 B.R. 784, 791 (Bankr. W.D. Pa. 2000).  Further, counsel has a continuing duty to correct any errors in the documents that he has filed. *Id.*  It is not the Trustee's responsibility to tell Debtors' counsel where the problems with his clients' documents lie.  Given the multitude of issues with the Debtors' Schedule A/B, prudent counsel would have reviewed *all* the remaining schedules to ensure that no additional problems existed.

Had Debtors' counsel thoroughly reviewed the entire petition as directed by the Trustee, he would have discovered other omissions and inaccuracies in the Debtors' Statement of Financial Affairs and Form 122C-2.  Although both Debtors testified that they were current on all their financial obligations at the time of filing, paragraph 6 of the original Statement of Financial Affairs inexplicably listed no payments to creditors within ninety (90) days of the petition date.  Counsel admits that this was an oversight on his part. *Memorandum in Support of Debtors' Motion to Dismiss and Objection to the Trustee's Request for Permanent Bar to Discharge*, CM/ECF Doc. 90, p. 4, n.4.

Similarly, the conflict between the Debtors' Form 122C-2 and their Statement of Financial Affairs regarding their charitable contributions is also without excuse. Initially, Form 122C-2 listed what were later determined to be non-existent charitable contributions.  These contributions were not reflected on the Debtors' Statement of Financial Affairs.  When the Trustee questioned this discrepancy, instead of removing the expense from Form 122C-2, Debtors' counsel instead filed an amended Statement of Financial Affairs to include the

11

contributions.  Obviously, counsel did not inquire in detail as to the nature of these contributions, however, as he placed *question marks* on the form in response to the name, address, and description of the charity.  It was only after the Trustee had to raise yet *another* objection that counsel finally filed a second amended Statement of Financial Affairs and a second amended Form 122C-2 to accurately reflect that the Debtors had no charitable deductions.  In Debtors' brief, counsel states that the discrepancies were the result of a "clerical error" on his part where charitable contributions were still reflected on Form 122C-2 and the Statement of Financial Affairs. *Memorandum in Support of Debtors' Motion to Dismiss and Objection to the Trustee's Request for Permanent Bar to Discharge*, CM/ECF Doc. 90, ¶ 20. However, this does not explain why charitable contributions were listed on the Debtors' Form 122C-2 in the first place if, in fact, no such contributions were made.  This error, which caused unnecessary work for the Trustee, this Court, and even counsel himself, could easily been avoided had counsel carefully examined each document prior to filing.

The Court wonders how such a significant (and odd) amount of charitable contributions could go unchecked by Debtors' counsel.  It was this casual, careless approach to preparing the schedules and statements that appeared to lead the Trustee to become so frustrated and aggravated with the Debtors.  The Court was somewhat puzzled at trial as to why the Trustee inquired in detail about seemingly insignificant assets. It is now clear, however, that the Trustee was demonstrating a repeated pattern of inattention by Debtors' counsel which resulted in *significant* problems with this case.

In addition to counsel's seemingly cavalier approach to preparing Debtors' schedules, the Court also has serious concerns regarding statements made by counsel regarding both the Debtors' alleged motivation for filing of this case as well as to the undisclosed worker's

compensation claims. Counsel baldly stated in Debtors' reply to the Trustee's objection to the

Motion to Dismiss that this case was essentially a placeholder and that it had always been the

Debtors' intention to dismiss this case once they became eligible for a Chapter 7 discharge.

*Debtors' Reply to Trustee's Objection to Debtors' Motion to Dismiss Chapter 13 Petition*, ECF

Doc. 85, ¶ 4.  The Court has no idea *why* counsel would make such a statement, especially as it

appears that it is untrue.  Mr. Lash credibly testified that had his income not been drastically

reduced due to his inability to work, he and his wife would still be making plan payments to the

Chapter 13 Trustee.   Counsel attempted to retract this "misstatement" asserting that after he filed

the Debtors' reply, he "reviewed the facts more closely" and discovered that the Debtors would

not have even qualified for Chapter 7 until the extreme reduction in Mr. Lash's income.

*Memorandum in Support of Debtors' Motion to Dismiss and Objection to the Trustee's Request*

*for Permanent Bar to Discharge,* ECF Doc. 90, p. 5, n.6.   This allegation had the potential to

cause *tremendous* harm to the Debtors, as it essentially concedes that this is a bad faith dismissal.

Given the magnitude of the statement and its attendant consequences for the Debtors, it was

incumbent upon Debtors' counsel to "review the facts more closely" prior to making the

statement instead of "creating the facts" in a belated attempt to explain his mistakes.

   The record and evidence in this case indicate that counsel made similar misjudgments

regarding Mr. Lash's worker's compensation claims.  There is no question that these claims

should have been disclosed on the Debtors' schedules and Statement of Financial Affairs

regardless of whether Mr. Lash believed the claims were viable or not. *Armstrong v. Lunday (In*

*re Lunday)*, 100 B.R. 502, 508 (Bankr. D. N.D. 1989) ("[e]ven if the debtor thinks the assets are

worthless he must nonetheless make full disclosure."); *American State Bank v. Montgomery (In*

*re Montgomery)*, 86 B.R. 948, 959 (Bankr. N.D. Ind. 1988) (asset must be scheduled even if

13

there is doubt or uncertainty as to the debtor's interest).  However, the Court is not convinced, given the number of counsel-related issues in this case, that the duty of disclosure was adequately explained to the Debtors.  In fact, both Debtors testified that they *did* tell their counsel about the worker's compensation claims when they met with him to discuss the possibility of dismissing this case.  Despite this, however, counsel did not file amended schedules to disclose these claims.  Instead, counsel advised the Debtors that they would have to include these claims in their subsequent Chapter 7 case.  Counsel had a duty to file amended schedules in this case to disclose these claims immediately upon learning of their existence and certainly prior to filing the Motion to Dismiss.  This left the Court without knowledge of the worker's compensation when the Motion to Dismiss was filed.

Although counsel made several errors in his handling of this case, the Court does not believe, however, that counsel acted in bad faith.  Instead, the problems here appear to be a function of hurriedly prepared schedules and careless drafting.  Debtors' counsel characterizes the defects in their schedules as "minute in nature" and insufficient to support dismissal of this case with prejudice.[7]  However, counsel must be cognizant that even seemingly minor omissions can lead to a denial of a debtor's discharge in certain circumstances.

> [E]ven if omitted assets or liabilities are not material and there is no actual fraudulent intent, each additional immaterial omission or error significantly increases the potential of a finding of a knowing or fraudulent falsehood.  This is because '[f]raudulent intent may be proved by showing either actual intent to deceive *or a reckless indifference for the truth.'*  The debtor's alleged reckless disregard for truth increases with each additional error or omission on the schedules and statements, even if each error or omission, taken individually, is the result of an honest mistake.

---

[7] The Court disagrees that all the defects in this case were "minute in nature."  The inaccurate $560.00 charitable contribution claimed on Form 122C-2 would have had a significant effect on the Debtors' disposable income.

14

Kevin M. Lippman & David Rakavina, *Ethical Issues and Malpractice Prevention: Preparation of the Schedules and the Statement of Financial Affair*, Consumer Bankruptcy One Year After the Bankruptcy Reform Act, University of Houston Law Foundation, Houston, TX, (October 12-13, 2006), p. 12 (internal citations omitted).

The Debtors seemed honest at trial and the problems in this case appear to be the result of a blundering series of mistakes and poor choices by Debtors' counsel.  The quality of work exhibited in this case is *extremely* out of character for this firm and the Court looks forward to the return of counsel's much higher standard of practice in the future.[8]  Certainly, the Court is aware that the Debtors are ultimately responsible for the information in their schedules, including the disclosure of lawsuits.  However, any "bad faith" by the Debtors in this particular case was exacerbated by the actions of their counsel and is insufficient to support a draconian sanction such as dismissal of their case with prejudice. Accordingly, for the reasons stated herein, the Trustee's Objection to the Debtors' Motion to Dismiss is overruled and this case is dismissed.

SEE WRITTEN ORDER ENTERED THIS DATE.

ENTERED: February 17, 2021

/s/ Laura K. Grandy
_____
UNITED STATES BANKRUPTCY JUDGE/3

---

[8] It is only counsel's reputation and years of excellent practice before this Court that leads the Court to believe that the issues in this case are merely an aberration.  However, the Court urges counsel to take immediate action to rectify the practices that resulted in the problems exhibited here.